ANDRÉ BIROTTE JR.
United States Attorney
ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division
VANESSA BAEHR-JONES (Cal. Bar No. 281715)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0511
     Facsimile: (213) 894-0141
     E-mail:    vanessa.baehr-jones@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 13-0641-JFW-1 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT ARTAK MOSKOVYAN |
| v. | |
| ARTAK MOSKOVYAN, | Sentencing Date: May 19, 2014<br>Sentencing Time: 9:00 a.m.<br>Location: Courtroom of the |
| Defendant. | Hon. John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Vanessa Baehr-Jones, hereby files its position regarding the sentencing of defendant ARTAK MOSKOVYAN, ("defendant").

//

//

//

The government's sentencing position is based upon the attached memorandum of points and authorities, the Presentence Report prepared by the United States Probation Office, and the files and records in this case.

Dated: May 7, 2014                    Respectfully submitted,

                                          ANDRÉ BIROTTE JR.
                                          United States Attorney

                                          ROBERT E. DUGDALE
                                          Assistant United States Attorney
                                          Chief, Criminal Division


                                                /s/
                                          VANESSA BAEHR-JONES
                                          Assistant United States Attorney

                                          Attorneys for Plaintiff
                                          UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

For the reasons set forth below, the government recommends a sentence of 84 months imprisonment to be followed by a three-year term of supervised release and a $100 special assessment. The government recommends the Court hold defendant liable for the loss amount resulting from all relevant conduct, as defined in U.S.S.G. § 1B1.3, connected to the offenses to which defendant pleaded guilty.

**I.   BACKGROUND**

Beginning on an unknown date and continuing to January 6, 2011, defendant and co-defendant Arakel Moskovyan ("Arakel") conspired to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2). (Plea Agreement at 8; PSR ¶ 13.) Specifically, there was an agreement between defendant, Arakel, and unknown others to produce and use counterfeit and unauthorized access devices, in violation of 18 U.S.C. §§ 1029(a)(1) and 1029(a)(2). (Plea Agreement at 8; PSR ¶ 13.) In furtherance of the conspiracy, defendant trafficked in at least 952 unauthorized access devices, storing the financial account numbers of third parties on his desktop computer and using device-making equipment to produce counterfeit access devices linking to these accounts. (Plea Agreement at 8; PSR ¶ 13.)

In furtherance of the conspiracy, on December 30, 2010, co-defendant Arakel knowingly used two counterfeit access devices, namely, two Bank of America account numbers ending in the four digits 4389 and 5073, belonging to M.H. and E.S., respectively, to make two $500 withdrawals at two separate Bank of America ATMs. (Plea Agreement at 8-9; PSR ¶ 14.)

The conspiracy ended with defendant's arrest on January 6, 2011, in the parking lot of a Del Taco restaurant in Glendale, California.

(See Exh. 1, Glendale Police Report, dated January 6, 2011, ("Police Report").)  Two Glendale police officers were driving through the parking lot when they saw defendant, who was leaning against a Lexus, fidget with something in his hands and then throw the item down to the ground when he saw the patrol car.  (Police Report at 4.)  The officers stopped the car, approached defendant, and Officer Justin Darby ("Officer Darby") asked defendant what he had thrown down.  (Police Report at 4.)  Although defendant responded that he had not thrown anything, Officer Darby saw on the ground what he recognized as a fraudulently re-encoded credit card: a partially-folded, blank, gold-colored card with a handwritten note that read "2004 AX 91204."  (Police Report at 4.)  The officers arrested defendant based on probable cause to believe he was in possession of a fraudulently-obtained access card and also pursuant to an outstanding state warrant relating to a previous arrest for a DUI charge.  (Police Report at 4-5.)  The officers then conducted an inventory search of the Lexus.[1]  (Police Report at 4.)  Inside a zipped black duffel bag in the trunk, the officers found hundreds of re-encoded access devices.  (Police Report at 5.)

Among the re-encoded cards found in the Lexus was a card with the Bank of America account number ending in the four digits 4389 and belonging to M.H.  (Plea Agreement at 9; PSR ¶ 15.)  On the day of his arrest, January 6, 2011, defendant knowingly possessed, without legal authority, this card, which was a means of identification that

---

[1] Defendant challenged the legality of this search in his motion to suppress evidence, (Doc. No. 45), and Arakel joined in this motion, (Doc. No. 55).  On February 21, 2014, the Court denied the motion.  (Doc. No. 58.)

2

defendant knew belonged to another person.  (Plea Agreement at 9; PSR ¶ 15.)

Glendale police obtained a state search warrant for defendant's residence,[2] which was also where co-defendant Arakel resided.[3] (Police Report at 5.)  During the search of the house, police officers discovered a computer with an attached access device reader/writer/encoder in defendant's bedroom.  (Exh. 2, Glendale Police Report, dated April 1, 2011.)

On March 3, 2014, defendant pleaded guilty to the First Superseding Information in United States v. Moskovyan, et al., CR No. 13-641, which charges defendant with conspiracy to commit access device fraud, in violation of 18 U.S.C. § 1029(b)(2), and aggravated identity theft, in violation of 18 U.S.C. § 1028A(a)(1).

**II.   THE PRESENTENCE REPORT**

The Probation Office found that defendant's total offense level is 25, based on a base offense level of six (U.S.S.G. § 2B1.1(a)(2)), a 14-level increase for loss exceeding $400,000 (U.S.S.G. § 2B1.1(b)(1)(H)), a six-level increase for 250 or more victims (U.S.S.G. § 2B1.1(b)(2)(C)), a two-level increase for the offense involving device-making equipment (U.S.S.G. § 2B1.1(b)(11)(A)(i)), and a three-level decrease for acceptance of responsibility (U.S.S.G.

---

[2] Arakel challenged the legality of the search warrant in his motion to quash, (Doc. No. 44), and defendant joined in this motion, (Doc. No. 46).  The Court denied the motion on February 21, 2014. (Doc. No. 58.)

[3] See Arakel's Motion to Quash, Doc. No. 44, at 4.

1 §§ 3E1.1(a), (b)).[4] (PSR ¶¶ 20-31.) The government concurs in the
2 Probation Office's calculation of the offense level.
3  The Probation Office calculated defendant's criminal history
4 category as III, based on four criminal history points. (PSR ¶¶ 34-
5 53.) The government concurs in this calculation of defendant's
6 criminal history category.
7  With an offense level of 25 and a criminal history category of
8 III, the Probation Office calculated the guideline imprisonment range
9 for Count One as 70-87 months. (PSR ¶ 82.) However, because the
10 statutorily authorized maximum sentence is less than the minimum of
11 the applicable guideline range, the Probation Office determined that
12 the guideline term of imprisonment for Count One is 60 months, or the
13 statutory maximum sentence (U.S.S.G. ¶ 5G1.2(b)). (PSR ¶ 82.) The
14 government concurs that this is the correct advisory guidelines
15 sentencing range for Count One.
16  The Probation Office found that Count Two has a two-year
17 mandatory minimum term of imprisonment that must be imposed
18 consecutively to any other counts. (PSR ¶¶ 80-81.) The government
19 concurs that Count Two requires the Court impose a consecutive
20 sentence of two years imprisonment.
21  The Probation Office found that restitution is applicable
22 pursuant to 18 U.S.C. § 3663A and requests the Court order a deferred
23 restitution hearing. (PSR ¶¶ 94-97.) The government concurs that
24 restitution is applicable.

---

[4] The Pre-Sentence Report states that defendant has not shown acceptance of responsibility, (PSR ¶ 18), but proceeds to credit defendant for acceptance of responsibility in its guidelines calculation, (PSR ¶¶ 29-30). Since defendant pleaded guilty on March 3, 2014, the government believes a downward adjustment for acceptance of responsibility is appropriate here.

4

## III. THE GOVERNMENT'S SENTENCING POSITION

The government believes a sentence of 84 months of imprisonment, followed by a three-year period of supervised release, is sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a).

An 84-month sentence is necessary to provide for general deterrence. Defendant participated in a scheme that involved skimming and stealing the financial information of unwitting third parties from ATMs and credit card readers. Defendant then used re-encoding equipment to create counterfeit cards that could fraudulently access these people's accounts. Through the scheme, defendant was able to access hundreds of third party credit and/or debit accounts. Given the ease with which third party financial information can be skimmed and stolen from credit card readers, meaningful sentences are necessary to deter others from engaging in the same conduct.

Defendant also used a means of identification of another person to further the scheme. Identity theft can cause great harm to the individual whose information has been stolen: in addition to immediate financial loss, a victim of identity theft can suffer long-term credit problems and, once a person's identification information has been compromised, it may be impossible to guarantee against further dissemination. As a result, victims of identity theft face the possibility of repeat victimization. Congress's creation a consecutive, mandatory minimum punishment provision for aggravated identity theft addressed the need for increased deterrence against these crimes in order to protect the public's most sensitive personal data.

5

1      Furthermore, the seriousness of the offense and the need for
2 just punishment warrant an 84-month sentence.  Defendant
3 intentionally conspired with co-defendant Arakel and unknown others
4 to produce and use counterfeit and unauthorized access devices.
5 Defendant's conduct was not a mistake, rather defendant knowingly
6 produced hundreds of fraudulent cards.  His conduct warrants a
7 meaningful sentence, and thus, an 84-month sentence is appropriate.
8 Moreover, as the Probation Office correctly noted, an 84-month
9 sentence is already 10-17 months below the guidelines range that
10 would apply were the defendant's sentence not limited by the
11 statutory maximum penalty.  (PSR ¶ 82.)  Given that defendant's
12 sentence has already effectively been reduced by this limit, no
13 further downward variance is necessary or appropriate here.
14      With respect to restitution, the government recommends the Court
15 hold defendant jointly and severally liable for the full loss amount
16 resulting from the conspiracy and any relevant conduct.  Defendant
17 agreed in the plea agreement that the Court may order restitution to
18 any victim for any losses suffered as a result of any relevant
19 conduct, as defined in U.S.S.G. § 1B1.3.  (Plea Agreement at 7.)  In
20 the case of a jointly undertaken criminal activity such as a
21 conspiracy, relevant conduct includes all reasonably foreseeable acts
22 and omissions of others in furtherance of the jointly undertaken
23 criminal activity.  U.S.S.G. § 1B1.3(a)(1)(B).

**IV.  CONCLUSION**

25      For the foregoing reasons, the government believes that a
26 sentence of 84 months imprisonment, followed by a three-year period
27 of supervised release, a $100 special assessment, and a restitution
28 order holding defendant jointly and severally liable for the loss

resulting from the conspiracy is sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. § 3553(a).

The government respectfully requests the opportunity to supplement its position or respond to defendant as may become necessary.  The government specifically requests the opportunity to submit additional information relating to the proper restitution amount in this case as it becomes available.

Dated: May 7, 2014                 Respectfully Submitted,

                                   ANDRÉ BIROTTE JR.
                                   United States Attorney

                                   ROBERT DUGDALE
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                         /s/
                                   VANESSA BAEHR-JONES
                                   Assistant United States Attorney

                                   Attorneys for Plaintiff
                                   United States of America

7